Filed 7/29/21  P. v. Molina CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075692 |
| v. | (Super.Ct.No. FWV19003995) |
| ROBERT TICO MOLINA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Ingrid Adamson Uhler, Judge.  Affirmed.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Collette C. Cavalier and Ksenia Gracheva, Deputy Attorneys General, for Plaintiff and Respondent.

Responding to a domestic violence disturbance situation involving defendant and appellant Robert Tico Molina and his estranged wife, D.M., who had a no-negative

1

contact order against defendant, Upland Police Officer Paul Song tried to diffuse the situation. When Officer Song could not get defendant to calm down or sit, he fired his taser at him but missed. Defendant laughed and called Song a "stupid ass bitch." Song tried to get defendant to put his hands behind his back and get down on the ground to be handcuffed. Defendant turned around but did not go to the ground. When Song placed his hand on defendant's shoulder to push him to the ground, defendant tensed, and pushed up. Song hit defendant two times on the shoulder with his baton in order to handcuff him. Defendant was handcuffed and pulled to his feet. As Song and another officer attempted to escort defendant downstairs, defendant used his shoulder to push Song against the wall, causing Song's body camera to fall off.

Defendant was convicted of resisting an executive officer by use of force and violence (Pen. Code, § 69)[1] and misdemeanor violating a domestic relations court order (§ 273.6, subd. (a)). Defendant admitted he had suffered a prior serious or violent felony conviction within the meaning of sections 667, subdivisions (b) through (i), and 1170.12, subdivisions (a) through (d). Defendant was sentenced to four years to be served in state prison.[2]

Defendant claims on appeal that (1) there was insufficient evidence presented to support his conviction of resisting arrest based on Officer Song's use of excessive force

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Defendant was sentenced to 180 days in county jail for the misdemeanor with credit for time served.

2

to effectuate the arrest; and (2) the trial court erred when it failed to instruct the jury on the lesser included offense of simple assault.

## FACTUAL BACKGROUND

D.M. was married to defendant and they had two daughters together. They did not live together. On December 7, 2019, D.M. went to a motel in Upland where defendant was staying to pick up their children. She and defendant got into an argument because he wanted her to stay and spend time together as a family. D.M. just wanted to pick up her children and leave. D.M. had a no-negative contact order against defendant.

Upland Police Officer Paul Song was on duty on December 7, 2019, when at approximately 5:00 p.m., he was dispatched to a domestic violence disturbance call at the Upland motel. When Officer Song arrived at the motel, D.M. was standing near her car in the parking lot and she was in an argument with defendant, who was on the second floor outside one of the motel rooms. One of their daughters (Doe) was standing by defendant. Defendant was yelling down to D.M. "cunt" and she was yelling that she just wanted Doe.

Officer Song tried to calm both of them down. Doe tried to walk to the stairs to reach D.M. but defendant stopped her and directed her back to the motel room. Song started up the stairs to try to help Doe. Song had his taser in his hand. Song was concerned that defendant was going to be aggressive.

When Officer Song got to the top of the stairs, defendant walked toward him. Song told defendant to stop and take a seat. Song wanted to detain defendant so that Doe could be removed from the situation. Defendant did not comply and was arguing with

3

Song. Song kept giving him commands to sit down. At one point, Song could not see defendant's hands and got concerned that defendant had a weapon. Defendant was wearing a loose jacket and Song could not be sure whether defendant had a weapon. When Song asked to see defendant's hands, defendant waved them around in the air and asked Song what he wanted. Song told defendant to sit down at least 15 times.

Officer Song was concerned about an altercation with defendant because defendant was bigger than him. Song continued to tell defendant to sit down. D.M. came up to the second floor and headed to the motel room to get Doe. Song told her to stop but she disregarded him and rushed into the room. Defendant walked toward the motel room. Song was concerned about what would happen to D.M. and Doe. Song deployed his taser at defendant but missed. Defendant laughed at Song and said "you missed, you bitch."

D.M. emerged from the motel room with Doe and ran down the stairs. Defendant walked toward Officer Song holding his hands "outwards and upwards" toward him. Song was still concerned that defendant may attack him so he instructed defendant to turn around. Song pulled out his baton and extended it. Defendant turned around and put his hands up.

Officer Song had decided to arrest defendant for obstructing a police officer and told him to get down on the ground so he could be handcuffed. Defendant did not get down on the ground. Song put his hand on defendant's shoulder to force him to the ground. Defendant tensed up and tried to stay standing. Song hit defendant in the shoulder or arm with the baton two or three times. At the same time he continued to tell

4

defendant to get down on the ground. Defendant went to the ground either due to the baton strikes or because of Song's commands. Song did not intend to hurt defendant with the baton; he only wanted him to comply with getting down on the ground.

Officer Song handcuffed defendant. He held the baton to defendant's back to keep him on the ground. Another officer, Upland Police Officer Paul Turner, arrived to assist him based on Song calling for backup. Turner observed Song struggling with defendant on the second floor of the motel. Turner went upstairs and helped him get defendant to his feet to take him to Song's patrol car. Song turned defendant around toward him. Defendant pushed his shoulder into Song causing him to fall into a wall. Song's body camera fell off. Song and Turner then pushed defendant down to the ground again. Once they gained control of defendant, they walked him to the patrol car.[3]

According to the audio from the body cameras worn by Officers Song and Turner, Song initially told defendant repeatedly to sit down. He also told defendant that he felt defendant was being aggressive. Song told defendant he could not see his hands. After repeatedly telling defendant to sit down, defendant responded, "I have a fuck, you have a seat dude. You have a seat, mother fucker . . . you have a seat." When Song missed defendant with the taser, defendant told him, "stupid ass bitch ass n***a."

---

[3] Officer Song's body camera video was shown to the jury but has not been provided to this court to review. Another video from a different body camera, showing defendant after he was handcuffed, was shown to the jury but has likewise not been provided to this court. The transcript of the audio from both body cameras is part of the record on appeal.

The audio from the body camera also revealed that when D.M. was upstairs getting Doe, she told Officer Song, "Just beat his ass already." After D.M. left, Song again told defendant to sit down. Defendant responded, "Here you can cuff me, bitch, how about this punk." Song told defendant to turn around and get down. Defendant told Song he was going to sue him and that he was going to get him fired. Defendant claimed he had done nothing wrong. Defendant told Song to get a lawyer. Song then told defendant to stop fighting then asked defendant, after he pushed him in the shoulder, "What the fuck was that" and that he had "picked up another felony." Defendant kept calling Song a "bitch" and a "punk."

As Officer Turner was taking defendant to the patrol car, defendant continued to state that he was going to sue. Turner told him he should not have tried to fight. Defendant called Turner a "punk" and told him, "fuck your authority fool."

After the incident, defendant had abrasions on the back and side of his head and a cut on his lip. Officers Song and Turner surmised these occurred when they had to place him back on the ground after he pushed Officer Song. It was not from hitting defendant with the baton. While defendant was on the ground a second time, Song held his arm against defendant's neck to keep him down. He denied hitting him in the head. If defendant had sat down and complied with his commands, Song would not have taken any action against defendant. Song only used his baton to get defendant to go down on the ground.

While in the patrol car, defendant spoke with Officer Song and the interview was recorded. Defendant told Song that it was not D.M. who was at the motel; it was his

6

mother in law. He later admitted he was lying. He admitted he was aware of the domestic violence restraining order. Song also asked defendant why he refused to comply with his orders and defendant stated he did not think that he had to comply.

## DISCUSSION

### A.    INSUFFICIENT EVIDENCE

Defendant contends the evidence of his conviction of resisting arrest was insufficient under both California law and the Fourteenth Amendment because no reasonable juror could have found that Officer Song did not use excessive force to effectuate the arrest.

When the sufficiency of evidence is challenged on appeal, we must review " 'the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Davis* (2009) 46 Cal.4th 539, 606.) "We do not reweigh the evidence or revisit credibility issues, but rather presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence." (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1004.) " 'Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the [finder of fact].' " (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.)

Section 69 can be violated two ways. "The first way of violating section 69 'encompasses attempts to deter either an officer's immediate performance of a duty

7

imposed by law or the officer's performance of such a duty at some time in the future.' " (*People v. Smith* (2013) 57 Cal.4th 232, 240 (*Smith*), italics omitted.) "The second way of violating section 69 expressly requires that the defendant resist the officer 'by the use of force or violence,' and it further requires that the officer was acting lawfully at the time of the offense." (*Ibid.*) Defendant was prosecuted under the second theory.

"An officer using excessive force is not acting lawfully." (*People v. Sibrian* (2016) 3 Cal.App.5th 127, 133.) "The use of excessive force by law enforcement officers is analyzed under the Fourth Amendment's objective reasonableness requirement for a seizure of the person." (*People v. Brown* (2016) 245 Cal.App.4th 140, 157 (*Brown*), citing *Graham v. Connor* (1989) 490 U.S. 386.) "Under *Graham*, then, the question in a case such as this is whether the amount of force the officers used in making the arrest was objectively unreasonable given the circumstances they faced." (*Allgoewer v. City of Tracy* (2012) 207 Cal.App.4th 755, 763.) Determining whether the force used is reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." (*Graham*, at p. 396.) Furthermore, " '[t]he "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain,

and rapidly evolving—about the amount of force that is necessary in a particular situation.' " (*Allgoewer*, at p. 762.)

Here, the jury was fully instructed on the excessive force charge and Officer Song's duty in making the arrest under California law. CALCRIM No. 2670 instructed the jury on whether Song was lawfully discharging his duties as a peace officer. It was further advised, "The People have the burden of proving beyond a reasonable doubt that the officer was lawfully performing his duty. If the People have not met this burden, then you must find the defendant not guilty of resisting an executive officer."

The evidence before this court supports the jury reasonably concluded that Officer Song was lawfully performing his duty and did not use excessive force when arresting defendant. Song arrived at the motel and defendant was yelling curse words at D.M.; Doe was with defendant and she was stopped by him from going to D.M. Defendant continued to yell at both Song and D.M.. Song tried to calm defendant, but defendant continued to yell. Song expressed concern about what defendant would do to Doe and about the aggressiveness of defendant. Defendant continued to argue and refused to comply with Song's commands. The seriousness of the situation, which was reported as a domestic violence disturbance, and which required Officer Song to call for backup, was not the minor offense of violating a no-negative contact order as described by defendant. Song was concerned based on the defendant's aggressiveness and the danger posed to Doe.

Further, defendant posed an immediate threat to Officer Song, D.M. and Doe. Song told defendant no less than 15 times that he was to sit on the ground. On the audio

9

of the body camera, defendant was repeatedly calling Song a "bitch" and "punk." He clearly had no respect for Song's authority. Defendant was on a narrow walkway on the second floor of the motel and he had Doe behind him in a motel room. Song had no indication as to what other dangers were in the motel room. When Song deployed the taser to keep defendant from going after D.M. and Doe, he missed, and defendant laughed and told him you "missed me" "stupid ass bitch ass n***a." Song expressed his concern for his own safety, due to defendant's behavior and because defendant was bigger than him, and Doe's safety.

Based on the circumstances, Song used reasonable force in order to handcuff defendant.

Defendant insists that defendant merely "tensing up" when Officer Song touched his shoulder did not warrant being hit with the baton, and defendant did not pose an immediate threat to Song. However, defendant mischaracterizes the evidence when Song touched defendant's shoulder. Song attempted to push defendant to the ground and defendant resisted. Song testified that he hit defendant in the shoulder with the baton in order to get him to comply with his demands, not to hurt him. He purposefully did not hit defendant in the head or other sensitive area. Further, defendant ignores the audio recording during which defendant refuses to comply with Song's demands and makes its clear he does not need to respect Song's authority.

Based on the foregoing, the evidence supports the jury's decision that Officer Song was lawfully performing his duty when he arrested defendant and did not use excessive force.

10

B.       <u>SIMPLE ASSAULT INSTRUCTION</u>

Defendant further contends the trial court erred by failing to sua sponte instruct the jury with the lesser included offense of simple assault.[4]

" 'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence.' " (*People v. Stewart* (1976) 16 Cal.3d 133, 140.) " '[I]nstructions on lesser included offenses "are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.] 'Substantial evidence' in this context is ' "evidence from which a jury composed of reasonable [persons] could ... conclude[]" ' that the lesser offense, but not the greater, was committed. [Citations.]" [Citation.] Instructions on lesser included offenses should be given "when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged." ' " (*Brown*, *supra*, 245 Cal.App.4th at p. 153.) We review whether a trial court improperly failed to instruct on a lesser included offense de novo. (*People v. Souza* (2012) 54 Cal.4th 90, 113.)

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) "An 'assault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur. Rather, assault only requires an intentional act and actual knowledge of those facts

---

[4] Defendant did not request the lesser included offense instruction of simple assault.

11

sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another.' " (*Brown*, *supra*, 245 Cal.App.4th at p. 151.) " '[W]hen excessive force is used by a defendant in response to excessive force by a police officer . . . defendant [may] be convicted, and then the crime may only be a violation of section 245, subdivision (a) or of a lesser necessarily included offense within that section,' such as section 240." (*Id*. at p. 154.) As such, "[E]ven if the officer is not acting within the scope of his duties because of his use of excessive force, the defendant may still be guilty of simple battery [or simple assault] if he responds with excessive force." (*People v. Castain* (1981) 122 Cal.App.3d 138, 145.)

The People essentially concede that simple assault is a lesser offense of violating section 69 based on the accusatory pleading in this case. However, they contend that the evidence did not support the lesser offense. We agree there was insufficient evidence presented to support the theory that defendant was only guilty of assault but not guilty of resisting an executive officer.

Defendant relies on *Brown*, *supra*, 245 Cal.App.4th 140, to support his claim that the trial court was required to instruct the jury on simple assault. In *Brown*, police officers observed the defendant, a 67-year-old male, riding a bicycle on the sidewalk with no light, which were violations of the municipal code and the Vehicle Code. The defendant refused to stop or get off his bicycle. One of the officers tackled the defendant and threw him to the ground. The officers testified that defendant swung his fists at them. The officers admitted that they struck the defendant by punching him in the torso area, using a knee to strike his torso and delivering two blows to the defendant's head.

(*Id.* at pp. 146-147.) In contrast, the defendant testified that he fell off his bicycle, and while facedown, and not resisting, one of the officers pinned him to the ground and hit him in the head without provocation. The defendant suffered a fractured rib and knots on his head. (*Ibid.*)

The appellate court held that the trial court should have instructed the jury with simple assault. The court explained that the jury could have believed the defendant's testimony that the officers used excessive force in apprehending him, and also believed the officers' testimony that the defendant "repeatedly swung at them, striking both officers" after he was apprehended. (*Brown*, *supra*, 245 Cal.App.4th at p. 154.) The court reasoned that, "[i]f the jury concluded that [the defendant]'s reaction was unreasonable, that would have supported an assault conviction." (*Ibid.*) The court concluded, "That view of the facts—i.e., that there was improper or excessive use of force on both sides—was frankly the most plausible interpretation of the evidence.' Thus, we conclude that the trial court erred by failing to instruct the jury regarding assault as a lesser necessarily included offense of the section 69 charge." (*Id.* at p. 154.)

Based on our review of the record in this case, we conclude the lesser offense instruction on simple assault was not warranted by the evidence. In order to reach a verdict on assault, the jury would have had to determine that defendant used excessive force in response to Officer Song's use of excessive force. (*Brown*, *supra*, 245 Cal.App.4th at pp. 154-155.) Here, the only evidence was the testimony of Song, who insisted he only used the baton in a non-lethal manner to get defendant to comply with being handcuffed. Moreover, the evidence established that Song only used his baton

after defendant repeatedly refused his commands to sit down and while he posed a risk to Doe in the motel room.  Additionally, while defendant pushed up against Song with force causing Song to have to use the baton, which supports the section 69 charge, this did not constitute excessive force in response to Song's actions.

*Brown* is distinguishable.  In *Brown*, the defendant testified at trial.  (*Brown*, *supra*, 245 Cal.App.4th at pp. 146-147.)  Accordingly, the jury in *Brown* was presented with conflicting evidence that could have supported a conviction for assault.  Moreover, the testimony in *Brown* showed that three officers tackled the defendant for a relatively minor offense, and struck him in the head.  (*Id.* at pp. 146-147.)  The jury could have credited the defendant's testimony that he fell off his bicycle and the officers attacked him without provocation.  Here, the jury received uncontradicted testimony from Officer Song, Officer Turner, and D.M. that defendant was not complying with Song's commands; and Song had to resort to hitting defendant in the shoulder with his baton to be able to handcuff him, because defendant tensed up and pushed against Song, refusing to get down on the ground.  Defendant did not testify or present evidence that the force used by Song went beyond the baton strikes, which, based on the evidence before this court, appear to have been minor.[5]  The evidence here did not support a lesser offense instruction on simple assault.

Further, even if the trial court erred by failing to instruct the jury on simple assault, " " '[T]he failure to instruct sua sponte on a lesser included offense in a

---

[5]  While the video shown to the jury showed the intensity of the baton strikes, this court was not provided with the video.

14

noncapital case is, at most, an error of California law alone, and is thus subject only to state standards of reversibility." [Citation.] Under the state standard, "such misdirection of the jury is not subject to reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome." [Citations.] "The Supreme Court has emphasized 'that a "probability" in this context does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility.' " ' " (*Brown*, *supra*, 245 Cal.App.4th at p. 155.)

The court in *Brown* found the error was prejudicial as follows: "The use of excessive force was a primary defense theory at trial and there was substantial evidence to support it. But the instructional error precluded the jury from finding that the officers used excessive force, while convicting Brown of assault for swinging at the officers in a manner that could have injured them, whether he intended to cause injury or not. A 'jury without an option to convict a defendant of a lesser included offense might be tempted to convict the defendant of an offense greater than that established by the evidence instead of rendering an acquittal.' " (*Brown*, *supra*, 245 Cal.App.4th at pp. 154-155.)

In contrast, here, there was not substantial evidence of the use of excessive force by Officer Song. Additionally, the jury was also instructed with a lesser included offense of resisting an officer in the performance or attempted performance of his duties without force or violence. (§ 148, subd. (a)(1).)[6] In fact, defendant's counsel argued to the jury

---

[6] While the jury in *Brown* was also instructed on the lesser included offense of section 148, the court did not consider the instruction in finding prejudice, presumably because the defendant admitted using force and violence. (*Brown*, *supra*, 245 Cal.App.4th at pp. 149, 154-155.)

that defendant only tensed up and did not refuse to sit down when Song touched his shoulder; and he did not push Song, but rather, he fell into Song.  This instruction permitted jurors to convict defendant of a misdemeanor rather than a felony, but the jury declined to do so.  As such, the possibility that the jury may have concluded that Song was lawfully performing his duties because they wanted to ensure the conviction, is not supported in this case.

Further, based on the entire record, it was not reasonable for the jury to find that Song used excessive force and that defendant in turn used excessive force against Song. Any conceivable error in failing to instruct the jury on the lesser included offense of assault was harmless.

## DISPOSITION

The judgment is affirmed in full.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

FIELDS
J.

RAPHAEL
J.

16